# In the United States Court of Federal Claims

No. 20-1220C

(E-Filed: July 23, 2021)

| | |
|---|---|
| UNITED COMMUNITIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Motion to Dismiss; RCFC |
| ) | 12(b)(6); Breach of Contract; |
| THE UNITED STATES, ) | Takings Claim; Fifth Amendment. |
| ) | |
| Defendant. ) | |

G. Scott Walters, Washington, DC, for the plaintiff. Sarah K. Carpenter and Parker A. Lewton, of counsel.

Sean L. King, Trial Attorney, with whom were Jeffery Bossert Clark,[1] Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Erika L. Whelan Retta, Senior Trial Attorney, Air Force Legal Operations Agency, Washington, DC, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

On December 16, 2020, defendant filed a motion to dismiss plaintiff's complaint in this case pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 8. Plaintiff filed its response to defendant's motion to dismiss on January 13, 2021, see ECF No. 9; and defendant filed its reply in support of its motion on January 27, 2021, see ECF No. 10. The motion is fully briefed and ripe for decision.

---

[1] Brian M. Boynton is listed as the Acting Assistant Attorney General on defendant's reply. See ECF No. 10 at 1.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, defendant's motion to dismiss is **GRANTED**.

I.    Background

    A.    The Military Housing Privatization Initiative and the Joint Base McGuire-Dix Contract

In 1996, the United States Congress established the Military Housing Privatization Initiative (MHPI) through the National Defense Authorization Act (NDAA) to improve the United States Department of Defense (DOD) owned military housing by working with the private sector. See ECF No. 1 at 3; NDAA for Fiscal Year 1996, Pub. L. No. 104-106, § 2801, 110 Stat. 186, 544-51 (1996) (codified as amended at 10 U.S.C. §§ 2871-2885 (2019)). The Office of the Secretary of Defense authorized each military branch to enter into agreements with private developers to this end. See ECF No. 8 at 8.

As part of the MHPI, on October 6, 2004, defendant, on behalf of the Secretary of the United States Air Force and the Secretary of the United States Army, see ECF No. 1 at 1, issued "Solicitation No. AFCEE-05-0001 for the Privatization of Military Family Housing for McGuire AFB/Fort Dix" (Joint Base McGuire-Dix), see ECF No. 1 at 4. Defendant selected plaintiff for the award on March 3, 2006, and the parties executed the contract effective September 29, 2006. See id. at 5. The contract includes both a lease of property agreement and an operating agreement.[2] See id.; ECF No. 8-1 at 2-80 (the lease agreement, Lease Number O/LEA-AMC-MCG-06-0001) and 81-88 (operating agreement).

Under the terms of the contract, defendant leases land to plaintiff at Joint Base McGuire-Dix for fifty years, and transfers to plaintiff its ownership interest "in certain improvements generally consisting of housing units located on the land." ECF No. 1 at 5. Plaintiff paid defendant one dollar in rent for the entirety of the fifty-year lease. See ECF No. 8-1 at 10. "The [c]ontract requires [p]laintiff to design, finance, demolish, develop, construct, renovate, own, manage, acquire, lease, operate, and maintain a privatized residential housing development located on [Joint Base McGuire-Dix] primarily for the use of military members and their families." ECF No. 1 at 5. Plaintiff alleges that it "has, among other things, renovated existing housing units and designed and constructed new housing units," and that it "is operating, maintaining, and managing the housing

---

[2]    Plaintiff did not attach the contract documents on which its claims are based to its complaint, but defendant attached them as an appendix to its motion to dismiss. See ECF No. 8-1. The operating agreement includes the rental rate management plan and unit occupancy plan as attachments. See id. at 89-136. The unit occupancy plan, in turn, includes the approved military resident lease as an attachment. See id. at 102-22.

units, and leasing the housing units primarily to military service member families at no expense to the government." <u>Id.</u> at 5-6.

The contract requires plaintiff to limit the amount of rent charged to military service members "at an amount equal to each military service member's [Basic Allowance for Housing (BAH)]." <u>see</u> ECF No. 1 at 6.  The contract defines BAH as follows:

> "**Basic Allowance for Housing (BAH)**" means, with respect to an active duty member of the Uniformed Services, the entitlement of such member for the cost of housing, including utilities and personal property insurance, pursuant to 37 U.S.C. Chapter 7, Section 403.  Such amount corresponds to such service member's Pay Grade and dependent status.  These values are set annually by the Department of Defense and published on the website www.dtic.mil.

ECF No. 8-1 at 68.

In addition, the contract defines the term "Target Rent" as follows:

> "**Target Rent**" means, (a) with respect to each Target Tenant who is an active duty member of the Uniformed Services, such tenant's monthly BAH at the "with dependent" rate less an amount sufficient to cover 110% of the average utility cost if such deduction is required pursuant to the Operating Agreement; and (b) with respect to each Target Tenant who has been designated by [defendant] as "Key and Essential," and is either single or unaccompanied, an amount equal to the BAH at the "without dependent" rate for the Tenant's pay grade less an amount sufficient to cover 110% of the average utility cost if such deduction is required pursuant to the Operating Agreement.

<u>Id.</u> at 76.

The contract documents also include the following relevant terms:

(1)   Service members are not required to rent from plaintiff, and defendant "is not obligated to pay rent for any housing units," <u>id.</u> at 44;

(2)   Plaintiff agreed to operate and maintain the housing "at its sole cost and expense," <u>id.</u>;

(3)   Plaintiff agreed to "operate and maintain the Leased Premises and the Leased Premises Improvements at no expense to [defendant]," <u>id.</u> at 84;

3

(4)   Plaintiff "shall collect rents from Target Tenants through allotments paid in accordance with the Rental Rate Management Plan," id.;

(5)   Defendant "shall in no case be responsible for or pay or reimburse [plaintiff] for costs associated with the operation and maintenance of the Project, or for any tenant defaults," id.;

(6)   Rent "will not exceed the [BAH] of the military member's grade designated for that unit (less a utility allowance for gas and electricity)," id. at 89;

(7)   "updates will be made annually as [defendant] approves and provides new BAH and utility-allowances," id.;

(8)   "It is anticipated that a BAH and utility component of BAH will change once per year," id. at 90;

(9)   "The amount of Tenant's monthly rent for the Premises is an amount equal to the [BAH] (BAH with dependents rate, or BAH equivalent for key and essential civilian government employees) that has been designated for the senior service member living in the Premises," id. at 102; and

(10)  "Rent will be adjusted for increases or decreases in Tenant's BAH at the time of the annual adjustment of rent for changes in the [DOD] BAH rates (historically such rate changes occur on or about January 1st of each year)," id.

B.   Statutory Framework Governing the Calculation of Basic Allowance for Housing

As noted above, the term BAH is defined with reference to "37 U.S.C. Chapter 7, Section 403." Id. at 68. Section 403 details the different categories of BAH based on the geographic duty location, pay grade, and dependency status of the service member and sets out the method by which BAH is calculated. See 37 U.S.C. § 403. According to plaintiff, from 2000 to 2014, including the time at which the parties executed the contract documents, 37 U.S.C. § 403 "permitted the Secretary [of Defense] to determine BAH rates based on the costs of adequate housing for civilians with comparable income levels in the same area and historical data regarding the national average monthly housing costs for the two preceding years." See ECF No. 1 at 6 (quotation marks omitted); see also ECF No. 8 at 13; 37 U.S.C. § 403(b)(2) (2000); 37 U.S.C. § 403(b)(2) (2006); 37 U.S.C. § 403(b)(2) (2012).

Congress amended the BAH statute in the 2015 NDAA to authorize the Secretary of Defense to implement a percentage-based reduction of BAH not to exceed one percent.

4

NDAA for Fiscal Year 2015, Pub. L. No. 113-291, § 604, 128 Stat. 3292, 3399 (2014). Congress further amended the percentage-based reduction section of the BAH statute as part of the 2016 NDAA allowing for additional, increasing percentage-based reductions in BAH over the next several years. See NDAA for Fiscal Year 2016, Pub. L. No. 114-92, § 603, 129 Stat. 726, 837 (2015). The amended BAH statute now states, in relevant part:

> (A)  The monthly amount of the basic allowance for housing for an area of the United States for a member of a uniformed service shall be the amount equal to the difference between—
>
> > (i)  The amount of the monthly cost of adequate housing in that area, as determined by the Secretary of Defense, for members of the uniformed services serving in the same pay grade and with the same dependency status as the member, and
> >
> > (ii)  The amount equal to a specified percentage (determined under subparagraph (B)) of the national average monthly cost of adequate housing in the United States, as determined by the Secretary, for members of the uniformed services serving in the same pay grade and with the same dependency status as the member.
>
> (B)  The percentage to be used for purposes of subparagraph (A)(ii) shall be determined by the Secretary of Defense and may not exceed the following:
>
> > (i)  One percent for months occurring during 2015.
> >
> > (ii)  Two percent for months occurring during 2016.
> >
> > (iii)  Three percent for months occurring during 2017.
> >
> > (iv)  Four percent for months occurring during 2018.
> >
> > (v)  Five percent for months occurring after 2018.

37 U.S.C. § 403(b)(3).

      C.    Plaintiff's Certified Claim and Complaint

Plaintiff alleges that "[f]rom December 25, 2015, to the present, the BAH statute has given the Secretary discretion to implement an incremental percentage-based reduction of the BAH and, since 2015, the Secretary has exercised this discretion in

applying a percentage-based reduction of 1% in 2015, 2% in 2016, 3% in 2017, 4% in 2018, and 5% after 2018." ECF No. 1 at 8.

On May 1, 2020, plaintiff made a certified claim to the contracting officer. See ECF No. 1 at 2; ECF No. 1-2. The contracting officer denied plaintiff's claim on June 29, 2020 in a final decision. See ECF No. 1 at 2; ECF No. 1-3 (certified claim). After the final decision, and a subsequent confirmation of the decision on July 8, 2020, plaintiff filed the instant action in this court in accordance with the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-09. See ECF No. 1 at 2-3.

In its complaint, plaintiff, alleges three causes of action based on the changes to the method for calculating BAH pursuant to 37 U.S.C. § 403(b)(3): (1) breach of contract; (2) breach of implied duty of good faith and fair dealing; and (3) violation of the takings clause of the Fifth Amendment to the United States Constitution. See id. at 12-15. Defendant now moves to dismiss the complaint for failure to state a claim upon which relief can be granted, under RCFC 12(b)(6). See ECF No. 8.

II.     Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss for failure to state a claim, the court "primarily consider[s] the allegations in the complaint," but is "not limited to the four corners of the complaint," and may also look to the "matters incorporated by reference or integral to the claim." See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citations omitted).

III.    Analysis

Defendant seeks to dismiss plaintiff's complaint for failure to state a claim under RCFC 12(b)(6) because the plain language of the parties' contract "makes clear that [defendant] is not responsible to make tenant rent payments to [plaintiff], and that [plaintiff] agreed to cap the tenant rent it can charge servicemembers based on their actual BAH." ECF No. 8 at 7. According to defendant, plaintiff "attempts to read-in a new contract term regarding a method of calculating BAH that was never incorporated,"

and "[i]n reality, [plaintiff] got exactly what it bargained for." Id.  For the following reasons, the court agrees.

> A. Plaintiff Fails to State a Claim for Breach of Contract

To state a claim for breach of contract, plaintiff must sufficiently allege: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989).  Determining the obligation or duty that arises out of a contract "is a legal question of contract interpretation." Id.  "Contract interpretation begins with the language of the written agreement." Bell/Heery v. United States, 739 F.3d 1324, 1331 (Fed. Cir. 2014).

If the contract language is unambiguous, it "must be given [its] plain and ordinary meaning." McAbee Const., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).  "[C]ontracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to the meaning of their provisions." Cmty. Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575, 1578 (Fed. Cir. 1993) (citations omitted).  Instead, "[a] contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language." Id. at 1579 (citations omitted).

In the complaint, plaintiff alleges that "[t]he cap on the amount of rent that [p]laintiff can charge military service members is a material [c]ontract term," and that defendant's unilateral decision to change the amount of the BAH paid to military service members is "a breach of contract for which [d]efendant is liable." ECF No. 1 at 12.

Defendant argues that plaintiff cannot allege a duty on defendant's part to support its breach of contract claim for two reasons.  First, defendant specifically disclaimed a duty to pay plaintiff anything at all under the terms of the contract.  See ECF No. 8 at 20-21.  And second, plaintiff agreed to charge rent to service members in an amount that does not exceed that service member's BAH as calculated annually by the DOD, with no limitation on the method of such calculation.  See id. at 21-28.  The court agrees on both points.

Plaintiff's theory in this case is that defendant breached the contract by reducing the BAH amount, therefore resulting in plaintiff being able to charge service members less than it expected for rent.  See ECF No. 1 at 10, 11; ECF No. 9 at 30.  Therefore,

plaintiff alleges, defendant is liable for the difference between the BAH rate plaintiff expected and the reduced BAH rate as set by the amended NDAA.[3]  See ECF No. 1 at 12.

As noted above, however, the express terms of the contract documents repeatedly make clear that defendant is not liable to plaintiff for any expected payments plaintiff does not receive.  See, e.g., ECF No. 8-1 at 44 (stating that service members are not required to rent from plaintiff, and that defendant "is not obligated to pay rent for any housing units"); id. (stating that plaintiff agreed to operate and maintain the housing "at its sole cost and expense"); id. at 84 (stating that plaintiff agreed to "operate and maintain the Leased Premises and the Leased Premises Improvements at no expense to [defendant]"); id. at 84, 89 (stating that plaintiff "shall collect rents from Target Tenants," and that rent "will not exceed the [BAH] of the military member's grade designated for that unit (less a utility allowance for gas and electricity)"); id. at 84 (stating that defendant "shall in no case be responsible for or pay or reimburse [plaintiff] for costs associated with the operation and maintenance of the Project, or for any tenant defaults").

Even assuming, however, that the contract provisions disclaiming defendant's liability for any payments to plaintiff were insufficient to insulate defendant from plaintiff's breach of contract claim, plaintiff also fails to establish that defendant was obligated to maintain the BAH amounts, as calculated at the time the contract was executed.  Consequently, changes to those BAH amounts do not breach the contract.

As an initial matter, the parties agree that the contract requires plaintiff to cap rent charges at the amount of a service member's BAH.  See ECF No. 1 at 6, 12; ECF No. 8 at 7, 21-22.  The parties further agree that the method for calculating BAH, pursuant to 37 U.S.C. § 403, was modified after the contract was executed.  See ECF No. 1 at 7-8; ECF No. 8 at 14-15.  The central disagreement relates to whether defendant is liable, under the terms of the contract, for the difference in allowed rent charges resulting from the statutory change.

According to plaintiff, "[t]he parties entered into the [c]ontract with the expectation the BAH may fluctuate, depending on the housing market year-to-year, but it was never part of the parties' bargain that the BAH [would] fluctuate based on the Secretary's sole discretion to reduce the BAH based on non-market factors."  ECF No. 9 at 22.  Plaintiff also argues that it "does not contend that the [defendant] does not have the power to change the BAH paid to service members.  Rather, [p]laintiff contends that, if [defendant] changes the BAH paid to [p]laintiff, 'it will pay [plaintiff] the amount by which its costs are increased by [defendant's] sovereign act.'"  Id. at 24 (quoting United States v. Winstar Corp., 518 U.S. 839, 881 (1996)).

---

[3]  Plaintiff attempts to define the reduced BAH rate as "partial BAH," but this is inaccurate framing.  See ECF No. 1 at 8.  The BAH rates are set in accordance with the BAH statute—the fact that a rate was reduced does not make it a "partial" allowance.  See 37 U.S.C. § 403(b)(3).

To support its position, plaintiff discusses in detail two cases from this court: Alaska Pulp Corp. v. United States, 48 Fed. Cl. 655 (2001) and Cardiosom, L.L.C. v. United States, 117 Fed. Cl. 526 (2014).  In both Alaska Pulp and Cardiosom, the court held that legislative changes to express terms of contracts between plaintiffs and the government resulted in breaches for which the government was liable.  See Alaska Pulp, 48 Fed. Cl. 655; Cardiosom, 117 Fed. Cl. 526.  These cases, however, are readily distinguishable from the case at bar.

In Alaska Pulp, the parties entered into a fifty-year contract for the purchase of timber in which the parties agreed to the "actual base prices for each type of timber," and a specific method for calculating prices beyond that base.  Alaska Pulp, 48 Fed. Cl. at 664.  Thirty years after the contract was executed, Congress passed a law that changed the method for calculating the prices included in the contract.  See id. at 665.  The court stated that "[w]hen parties negotiate a sales contract, the price agreed upon, or the mechanism for determining that price, is central to the bargain they strike."  Id.  For this reason, the court concluded that the legislative action that changed the method for calculating prices explicitly outlined in the contract was a material breach.  See id.

Similarly, in Cardiosom, the plaintiff alleged that the defendant breached a contract with plaintiff when Congress passed legislation that required the defendant to cancel the contract.  See Cardiosom, 117 Fed. Cl. at 528.  The defendant argued that the cancellation was not a breach because "certain language in the contract shifted the risk of regulatory change to [plaintiff]." Id.  The court disagreed, and held that plaintiff had not assumed the risk of such legislative action, explaining as follows:

> The risk of regulatory change refers to the risk that Congress might pass a new statute, or an agency might promulgate a new regulation, that would prevent the agency from meeting its obligations, as promised under an existing contract with a private party.  The risk of regulatory change rests with the agency, because it would be the agency that could not perform its promise and would be in breach and thus liable for damages. . . .  [T]he government is still obligated to honor its contracts even if the governing regulations change, preventing its performance.

Id. at 532 (citations and quotations omitted).

Plaintiff urges the court to find that the changes to the method for calculating BAH were a material breach for the same reasons articulated by this court in Alaska Pulp and Cardiosom.  The court declines to do so.  Unlike the contract at bar, the contract in Alaska Pulp specified the base rates for timber and the method for calculating prices beyond those base rates in the terms of the contract.  Here, however, the contract plainly does not address the specific method of calculating the BAH, other than to recognize that the BAH is set annually by the [DOD] in accordance with 37 U.S.C. § 403.  See ECF No.

8-1 at 68.  Moreover, plaintiff concedes that the "2006 BAH statute was [not] incorporated by reference into the Lease Agreement."  ECF No. 9 at 17.  As such, plaintiff has not sufficiently alleged that defendant had a duty to maintain the method for calculating BAH that was in force at the time the contract was executed.

Plaintiff's argument under Cardiosom is likewise unavailing.  Absent a duty to calculate BAH in a particular manner, a change in the method of calculation cannot be a breach.  See ECF No. 10 at 13 (noting that "the BAH statutory changes did not modify any [g]overnment obligation or duty in the Lease Agreement because no such duties existed in the first place").  As such, the changes to the BAH statute do not, under the logic of Cardiosom, prevent defendant from performing its obligations under the contract.  See Cardiosom, 117 Fed. Cl. at 532.

Accordingly, because plaintiff has not sufficiently alleged a duty on the part of defendant with regard to the method required for calculating BAH, its breach of contract claim must be dismissed.

      B.     Plaintiff Fails to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing

Implied in every contract is a duty of good faith and fair dealing.  See Metcalf Const. Co. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014) (citing Restatement (Second) of Contracts § 205 (1981)). "The covenant of good faith and fair dealing . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract."  Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005).  The implied duty of good faith and fair dealing, however, "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions."  Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 831 (Fed. Cir. 2010) (citing Centex, 395 F.3d at 1304-06).

In the complaint, plaintiff alleges that defendant "breached its implied duty of good faith and fair dealing by unilaterally reducing the BAH rates, thus reducing the maximum amount that [p]laintiff could charge as rent for its housing units, and then making rent payments for service member tenants at those reduced amounts."  ECF No. 1 at 14.  According to plaintiff "the Secretary's reduction of the BAH . . . deprives [p]laintiff of its reasonable and justified expectations under the [c]ontract and undermines the benefit of the bargain underlying the entire MHPI program."  Id.

Plaintiff's claim for breach of the implied duty of good faith and fair dealing fails for the same reason its claim for breach of contract fails—under the plain terms of the contract, defendant has no duty to maintain the method for calculating BAH that was in

force at the time the contract was executed.  For this reason, the implied duty of good faith and fair dealing alleged by plaintiff would impermissibly "expand [defendant's] contractual duties beyond those in the express contract." Precision Pine, 596 F.3d at 831.

Accordingly, plaintiff's claim for breach of the implied duty of good faith and fair dealing must be dismissed.

  C.  Plaintiff Fails to State a Claim for a Taking under the Fifth Amendment

The Takings Clause of the Fifth Amendment provides: "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V, cl. 4. The United States Court of Appeals for the Federal Circuit employs a two-part test in evaluating takings claims. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking.  Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009) (citations omitted).

Plaintiff's takings claim states, in its entirety, as follows:

COUNT III
(Violation of the Takings Clause of the Fifth Amendment)

72. Plaintiff hereby re-alleges all averments set forth in the foregoing [p]aragraphs and incorporates the same as if set forth verbatim.

73. Under the [c]ontract, [p]laintiff is owner and operator of 2,212 housing units at [Joint Base McGuire-Dix].

74. Under the [c]ontract, [p]laintiff is entitled to receive payment from the government for rental charges to military service personnel occupying these housing units.

75. Under the [c]ontract, [p]laintiff is restricted from renting [p]laintiff's housing units at [Joint Base McGuire-Dix] to non-military service member tenants unless occupancy falls below 95%.

76. Under the [c]ontract, the amount that [p]laintiff is required to charge military service members is capped.

77. By requiring [p]laintiff to provide housing to military families, not permitting [p]laintiff to rent to other non-military tenants unless occupancy falls below 95%, capping the amount of rent that [p]laintiff can charge

> military families in an amount equal to the Partial BAH, and prohibiting [p]lainiff from seeking rental payment from military families in excess of Partial BAH amounts, [d]efendant is depriving [p]laintiff of its expectations with regards to the use of its property, without just compensation.
>
> 78.   As a direct and proximate result of [d]efendant's unconstitutional taking of [p]laintiff's property interest without just compensation, [p]laintiff has been damaged in an amount to be proven at the trial of this matter, but not less than $3,865,971.49.

ECF No. 1 at 14-15.

Plaintiff clearly identifies the property interest at issue as its "expectations with regards to the use of its property" under the terms of the contract, and claims it has been deprived of that interest by defendant's decision to modify the manner in which BAH is calculated. Id. at 15. But as the court has previously found, the plain language of the contract does not support plaintiff's assertion that any such expectation interest exists. Under the terms of the contract, plaintiff agreed to cap rent charges at the amount of each service member's BAH, see ECF No. 8-1 at 76, 89, and it further agreed that the BAH amounts would be determined annually by the DOD, pursuant to 37 U.S.C. § 403, see id. at 68.

In its response to defendant's motion to dismiss, plaintiff argues that its "takings claim does not arise under the [c]ontract that is the subject of its breach of contract claims—the scope of these two claims is different." ECF No. 9 at 36. Instead plaintiff claims that the lease agreements into which it entered with individual service members "conferred on [p]laintiff a cognizable property interest and legitimate claim of entitlement." Id. at 37. Plaintiff further states that "[i]t was the government's extra-contractual, unilateral, and unfettered adjustment of the service members' BAH, based on subsequent legislation, that interfered with [p]laintiff's property interest and which forms the basis of [p]laintiff's takings claim." Id.

While plaintiff may have intended to plead a takings claim based on a property interest other than its alleged expectations under the contract, that is not the claim that appears in the complaint. The complaint repeatedly states that the takings claim is based on facts established "[u]nder the contract," and describes the rights involved in terms of the alleged contractual obligations of the parties. See ECF No. 1 at 14-15. Plaintiff's argument in briefing, no matter how vehemently asserted, cannot change the nature of the allegations as stated in the complaint.

Thus, because the court has already concluded that plaintiff cannot establish that it was entitled under the contract to any amounts above the BAH as established by the

DOD, plaintiff has failed to sufficiently allege a cognizable property interest, and its takings claim must be dismissed.[4]

IV.     Conclusion

Accordingly, for the foregoing reasons:

(1)     Defendant's motion to dismiss, ECF No. 8, is **GRANTED**; and

(2)     The clerk's office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's complaint in its entirety, **with prejudice**.

IT IS SO ORDERED.

> s/Patricia E. Campbell-Smith
> PATRICIA E. CAMPBELL-SMITH
> Judge

---

[4] In reaching this conclusion, the court does not hold that a breach of contract claim, and a takings claim cannot co-exist in a complaint. See Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1369 (Fed. Cir. 2009) (noting that "the fact that a cause of action was pled under a contract theory did not preclude a separate count for a cause of action based on a taking"). The court's ruling is limited to the finding that plaintiff has failed to sufficiently plead a cognizable property interest considering the facts of this case.